IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL BETO | : | CIVIL ACTION |
| | : | NO. 14-cv-2522 |
| v. | : | |
| | : | |
| KIMBERLY A. BARKLEY, et al. | : | |

O'NEILL, J.                                                    February 12, 2015

## MEMORANDUM

Now before me is defendants' motion to dismiss plaintiff Samuel Beto's complaint.  This motion is brought on behalf of Superintendent Vince Mooney of the Pennsylvania Department of Corrections and the following defendants who are employees of the Pennsylvania Board of Probation and Parole (PBPP):  Chairman William F. Ward, Board Secretary Kimberly A. Barkley, Board Secretary W. Conway Bushey, Interstate Director Marlin F. Foulds, Parole Agent Kathleen DeMauro[1], Hearing Examiner Michael Duda, Parole Agent Fred Conjour, Supervisor Carl Christian, Supervisor David M. Dettinburn, and Agent James De Sousa.  For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

On February 17, 1989, plaintiff was sentenced in the Court of Common Pleas of Montgomery County "to an aggregate term of 2 1/2 to 10 years incarceration and 7 years of probation . . . ."  Dkt. No. 1 at ¶ 10.  "The maximum sentence date for these sentences was October 3, 1998."  Id.  On March 20, 1992, plaintiff was resentenced following an arrest and conviction in Montgomery County.  Id.  Plaintiff alleges that the maximum date for his new

_____

[1]     According to defendants DeMauro is incorrectly identified in plaintiff's complaint as "Delmauro."  Dkt. No. 2 at ECF p. 2.

sentence was July 23, 1998.  Id

Prior to that date, on March 25, 1998, plaintiff was arrested on a federal arrest warrant. Id. at ¶ 11.  He made bail on the same day.  Id.  "On March 26, 1998, Plaintiff reported to his state parole officer and was detained."  Id. at ¶ 12.  He asserts that defendant Christian "signed, authorized, and recommended Plaintiff's detention on March 25, 1998."  Id. at ¶ 34.  He alleges that defendant Conjour, who was supervised by Christian, arrested him "with no prima facie case established in the context of Plaintiff's federal arrest."  Id. at ¶ 33.  Nevertheless, plaintiff entered into a guilty plea on the federal charges against him on May 11, 1998.  Id. at ¶ 13-14.

Plaintiff claims that he "was held in state custody at Montgomery County Prison and SCI Graterford from March 26, 1998, until October 21, 1998, without ever being given a parole violation hearing"[2] but "[t]here was no basis for detaining [him] after 14 days because no prima facie case had been established by federal authorities."  Id. at ¶ 15.  He asserts that he "never had a state parole . . . setback while at SCI Graterford."  Id. at ¶ 14.  Plaintiff alleges that he "was informed that Defendant Ward had lifted the detainer [against Plaintiff] because Plaintiff had maxed out his state sentences . . . ."  Id. at ¶ 16.  On October 16, 1998, defendant "Ward personally reviewed and signed documents which revoked a warrant to detain Plaintiff," but plaintiff contends that "Ward did not, however, close Plaintiff's case . . . ."  Id. at ¶ 29.  Plaintiff also contends that 26 days after his "max date,' defendant "Foulds personally placed a detainer on Plaintiff."  Id. at ¶ 28.

"[O]n October 21, 1998, federal authorities transported plaintiff from SCI Graterford to FCI Farrington for presentencing."  Id.  "On October 26, 1998, Plaintiff was sentenced in the

---

[2]    In his response to defendant's motion to dismiss plaintiff claims that he "was held at SCI Graterford from the time of his federal plea on May 11, 1998, until October 21, 1998 . . . ."  Dkt. No. 5 at ECF p. 15.

United States District Court for the Eastern District of Pennsylvania to 17 years incarceration with the possibility of doing 15 years if plaintiff exhibited good behavior, followed by 3 years of supervised release." Id. at ¶ 17. In November 1998, he "was sent to high security USP Lewisburg because there was a state detainer lodged despite the fact that Plaintiff had maxed out his state sentences." Id. at ¶ 18. On March 1, 2013, having served 15 years, plaintiff was released from USP Lewisburg. Id. at ¶ 19.

Plaintiff claims that "because Defendants employed by the Department of Probation and Parole had issued a detainer," upon his release from USP Lewisburg, he was transported to SCI Coal Township. Id. at ¶ 20. He claims that defendant "Bushey reviewed and personally signed off on paperwork mandating that an illegal detainer remain on Plaintiff from November 1998 until July 2013." Id. at ¶ 27. Plaintiff alleges that Foulds "failed to review the legitimacy of this detainer for 15 years despite complaints from plaintiff, and again executed the detainer on March 1, 2013, meaning that Plaintiff was returned to state prison following completion of his federal sentence." Id. at ¶ 28.[3] He claims that defendant Dettinburn "reviewed, signed, and authorized a document regarding new charges on March 11, 2013," id at ¶ 35, and that defendant De Sousa, who was assigned to his case in 2013, "signed a new notice of charges against Plaintiff." Id. at ¶

---

[3]    Attached as Exhibit D to plaintiff's response to defendants' motion to dismiss is a warrant authorizing plaintiff's detention signed by Foulds and Bushey which is dated November 25, 1998. Dkt. No. 5-4 at ECF p. 2. Exhibit E, a February 14, 2013 arrest and criminal disposition report references a "warrant for paroled prisoner issued 2/5/1999" signed by Foulds and Bushey. Dkt. No. 5-5 at ECF p. 2. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben. Guar. Corp v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal quotations omitted). Even if I were to consider the materials attached to plaintiff's response to defendants' motion, I would find that they do not transform his complaint into a pleading that contains sufficient factual matter to withstand dismissal.

36.

Plaintiff contends that "because of a Pennsylvania detainer that determined that Plaintiff was a high-security prisoner and was not eligible for release to a halfway house," he "was deprived of his liberty for a period of approximately 689 days which includes both excess time in Pennsylvania detention and three-hundred-and-sixty-five extra days in federal prison." Id. at ¶ 24.  Plaintiff also claims that the detainer "damaged and harmed [him] because he was subjected to a harsher, higher-level security custodial environment while in federal prison than if the state detainer [had] not been put into effect." Id.  "Despite multiple grievances, parole Petitions, and hearings, Plaintiff remained incarcerated at SCI Coal Township until July 12, 2013, when he was released. Id. at ¶ 21.  Plaintiff alleges that he should have had a parole board examiner hearing on May 9, 2013, but that defendant "Duda wanted to make plaintiff wait for a Board hearing until July 12, 2013." Id. at ¶ 32.  After the hearing, plaintiff contends he "had to wait eight (8) weeks and three (3) days for a Board decision when such decisions normally occur within four (4) to six (6) weeks." Id.

Plaintiff alleges that he sent letters and petitions to defendant Kimberly A. Barkley "seeking an explanation as to why he was eventually released on July 12, 2013," but that Barkley did not respond. Id. at ¶ 26.  Plaintiff claims that DeMauro "was personally involved in receiving numerous requests and grievances by Plaintiff regarding [his] continued illegal detention . . . ." Id. at ¶ 31.  Plaintiff also contends that he submitted "numerous grievance slips" to Mooney and his subordinates.  Id. at ¶ 30.

Plaintiff asserts that "Defendants, in their official capacities, have engaged in conduct that violated Plaintiff's Eighth Amendment rights as incorporated through the Fourteenth Amendment and the rights guaranteed by the Fourteenth Amendment's Procedural Due [Process]

Clause thereby also violating 42 U.S.C. § 1983." Id. at ¶ 5.  He contends that

> the Constitutional violations include, but are not limited to the
> following:  A.  Keeping Plaintiff incarcerated beyond his lawful
> maximum date.  B.  Failing to respond and/or adequately respond
> to the grievances, complaints, and petitions submitted by Plaintiff.
> C.  Failing to provide adequate procedural methods to determine
> that Plaintiff was being held beyond his maximum sentence date.
> D.  Failing to adequately train or be trained regarding sentence
> structures.  E.  Failing to respond to Plaintiff's particular
> grievances, complaints, and petitions.  F.  Consistently failing to
> take even the most modest and ameliorative or reparative measures
> when presented with said evidence.

Id.  Plaintiff also contends that "all Defendants, acting in their personal capacities, have

wrongfully arrested and imprisoned Plaintiff because all defendants acted outside the scope of

their employment by keeping plaintiff imprisoned when Plaintiff had maxed out his state

sentences." Id.

## STANDARD OF REVIEW

## I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction:  12(b)(1)

Because Eleventh Amendment immunity deprives a court of subject matter jurisdiction, a

motion to dismiss based on Eleventh Amendment grounds "may properly be considered a motion

to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."

Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n.2 (3d Cir. 1996).  A motion under Rule

12(b)(1) may be treated as either a facial attack on the complaint or a factual challenge to the

Court's subject matter jurisdiction.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d

Cir. 2000).  A court reviewing a facial attack may consider only the allegations of the complaint

and any documents referenced therein or attached thereto in the light most favorable to the

plaintiff.  Id.  In reviewing a factual attack, a court may consider evidence outside the pleadings.

Id.

Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged, but the legal standard for surviving a Rule 12(b)(1) motion is a low one.  <u>Kehr Packages v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991).  "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  <u>Gould</u>, 220 F.3d at 178.  Nevertheless, "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  <u>Kulick v. Pocono Downs Racing Ass'n</u>, 816 F.2d 895, 899 (3d Cir. 1987), <u>quoting</u> <u>Oneida Indian Nation v. Cnty. of Oneida</u>, 414 U.S. 661, 666 (1974).

## II.    Motion to Dismiss for Failure to State a Claim:  12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  <u>Id.</u> (citations omitted).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u> at 556.  The Court of Appeals has made clear that after <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I.   State Law Claims:  Sovereign Immunity

Defendants argue that "sovereign immunity bars plaintiff's state law claims" for false arrest and false imprisonment.  Dkt. No. 2-1 at ECF p. 23.  I agree.  Officials and employees of the Commonwealth of Pennsylvania "acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except where the General Assembly shall specifically waive the immunity."  1 Pa. Cons. Stat. Ann. § 2310.  Plaintiff's claims for false arrest and false imprisonment are not included with the nine exceptions to sovereign immunity set forth in 42 Pa. Cons. Stat. Ann. § 8522(b).  Absent factual

allegations in plaintiff's complaint that would show that defendants were acting outside of the scope of their employment with respect to the conduct underlying plaintiff's state law claim, plaintiff's claims for false arrest and false imprisonment under state law are barred by sovereign immunity.  See Bosold v. Warden, SCI-Somerset, No. 11-4292, 2011 WL 6812902, at *8 (E.D. Pa. Dec. 28, 2011).

Plaintiff claims that "Defendants' willful actions and deliberate indifference towards Plaintiff and rules and regulations regarding sentencing meant that Defendants acted outside of the scope of their employment."  Dkt. No. 1 at ¶ 1.  However, notwithstanding plaintiff's characterization of defendants' alleged conduct, "when stripped of its legal conclusions, the [complaint] simply alleges that Defendants kept Plaintiff imprisoned.  [I] cannot conclude that keeping an inmate imprisoned is not the kind of conduct these employees were employed to perform."  Bosold, 2011 WL 6812902, at *9.  "Even an employee not doing what he or she is actually supposed to do may remain within the scope of employment."  Povish v. Pa. Dep't of Corr., No. 13-0197, 2014 WL 1281226, at * 9-10 (E.D. Pa. Mar. 28, 2014).  There are no factual allegations in the complaint that suggest defendants had any personal motivation to injure Beto, "[t]hus, it would appear that their actions were motivated, at least in part and perhaps in whole, to serve the employer."  Robus v. Pa. Dep't of Corr., No. 04-2175, 2006 WL 2060615, at *9 (E.D. Pa. Jul. 120, 2006) (dismissing claims for assault and battery brought against prison guards and the superintendent because their actions took place within the scope of their employment).  I will grant defendants' motion to dismiss with respect to plaintiff's state law claims for false arrest and false imprisonment.

## II.    Eleventh Amendment – Official Capacity Claims

The Eleventh Amendment of the U.S. Constitution provides: "[t]he Judicial power of the

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Defendants argue that under the Eleventh Amendment plaintiff's official capacity claims cannot go forward.  Dkt. No. 2-1 at ECF p. 5-7.  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  In response plaintiff argues that defendants "acted in their official capacities, under a color of state law theory, and claims should not be dismissed [sic]."  Dkt. No. 5 at ECF p. 8-9.  Despite plaintiff's argument, it is well established that § 1983 does not provide for claims for money damages against state officials in their official capacities.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 70–71 (1989); see also Beckett v. Pa. Dep't of Corr., No. 14-3656, 2015 WL 75258, at *1 (3d Cir. Jan. 7, 2015) (finding that the District Court correctly held that the Eleventh Amendment barred [the plaintiff's] claims for money damages against Department of Corrections[ ] defendants in their official capacities); Dill v. Oslick, No. 97-6753, 1999 WL 508675, at *3 (E.D. Pa. July 19, 1999) ("The Pennsylvania Board of Probation and Parole and its employees in their official capacities are an arm of the Commonwealth entitled to Eleventh Amendment immunity.").[4]  Accordingly, I will dismiss plaintiff's claims the extent that he brings them against defendants in their official capacities.

I next consider whether plaintiff has sufficiently alleged the liability of defendants in

---

[4]        "Eleventh Amendment immunity is . . . subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law."  Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).  Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1979).  Further, Pennsylvania has not waived its Eleventh Amendment immunity.  1 Pa. Cons. Stat. Ann. § 2310.  Furthermore, plaintiff, who is no longer incarcerated, does not and cannot request injunctive relief.

their individual capacities.

## III.   Personal Involvement

It is well established that in order to state a § 1983 claim against state officials in their

individual capacities plaintiff must allege facts sufficient to raise a plausible inference that

defendants were personally involved in violating the plaintiff's constitutional rights.  See

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), citing Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement

in the alleged wrongs.").  "Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207 (citations omitted).

Such allegations "must be made with appropriate particularity."  Id.

To recover against defendants for overdetention in violation of the Eighth Amendment

pursuant to 42 U.S.C. § 1983, plaintiff must show:

> (1) a prison official had *knowledge* of the prisoner's problem and
> thus of the risk that unwarranted punishment was being, or would
> be, inflicted; (2) the official either *failed to act or took only*
> *ineffectual action* under the circumstances, indicating that his
> response to the problem was a product of deliberate indifference to
> the prisoner's plight; and (3) a *causal connection* between the
> official's response to the problem and the unjustified detention.

Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010), as amended (May 25, 2010)

(emphasis added), citing Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989).  To state a claim

under section 1983 for a state actor's failure to provide procedural due process under the

Fourteenth Amendment, plaintiff must allege:  (1) an interest encompassed within the Fourteenth

Amendment's protection of life, liberty or property; and (2) that the procedures available to

plaintiff did not provide due process of law.  See, e.g. Alvin v. Suzuki, 227 F.3d 107, 116 (3d

Cir. 2000).  I find that plaintiff's complaint fails to state a plausible claim that defendants had the

-10-

requisite personal involvement in his claimed overdetention.  Likewise, his complaint fails to state a plausible Fourteenth Amendment procedural due process claim against Duda, Christian or Conjour.

First, plaintiff alleges conclusorily that "[e]ach individually-named Defendant had personal knowledge that unwarranted punishment was being inflicted upon plaintiff."  Dkt. No. 1 at ¶ 25.  This allegation, without more, is clearly insufficient to plead the requisite personal involvement under <u>Twombly</u>.  Plaintiff then asserts claims against defendants Bushey, Ward, Christian, Dettinburn and Desousa based only on their review of and alleged signatures on various documents regarding his detention or the charges against him:  (1) "Bushey reviewed and personally signed off on paperwork mandating that an illegal detainer remain on Plaintiff from November 1998 until July 2013," <u>id.</u> at ¶ 27; (2) "Ward personally reviewed and signed documents which revoked a warrant to detain Plaintiff on October 16, 1998," <u>id.</u> at ¶ 29; (3) "Christian signed, authorized, and recommended plaintiff's detention on March 25, 1998, <u>id.</u>at ¶ 34; (4) "Dettinburn reviewed, signed, and authorized a document regarding new charges on March 11, 2013," <u>id.</u> at ¶ 35; and (5) "De Sousa signed a new notice of charges against plaintiff and was assigned Plaintiff's case in 2013."[5]  <u>Id.</u> at ¶ 36.  Plaintiff's claims against Barkley arise from his allegation that she "was sent letters and Petitions by Plaintiff without any response."  <u>Id.</u> at ¶ 26.  He asserts that DeMauro "was personally involved in receiving numerous requests and grievances by Plaintiff regarding Plaintiff's continued illegal detention from March 1, 2013 until Plaintiff's eventual release in July of 2013."  <u>Id.</u> at ¶ 31.  Plaintiff asserts that

---

[5]     Plaintiff also alleges that "De Sousa  told Plaintiff's wife that the Board was allowed to do what it was doing and that Plaintiff and his wife were reading law books incorrectly."  Dkt. No. 1 at ECF p. 36.  This allegation is likewise insufficient to show that Desousa had the requisite personal involvement in the alleged violation of plaintiff's Eighth Amendment rights to support plaintiff's claim against him.

"Duda wanted to make Plaintiff wait for a Board hearing until July 12, 2013, when this hearing should have occurred on May 9, 2013 . . . ." <u>Id.</u> at ¶ 32.  He does not allege that Duda actually undertook any specific actions with respect to his detention.

Without more, plaintiff's claims that these defendants acted to deprive him of his rights, supported only by his allegations with respect to their signatures, their receipt of plaintiff's complaints or, in Duda's case, his personal desire, are insufficient to raise the inference that these defendants were personally involved in the alleged violation of plaintiff's constitutional rights. <u>See</u> <u>Thomas v. Barkley</u>, No. 13–551, 2013 WL 4786124, at *6 (W.D. Pa. Sept.6, 2013) (finding in a former Pennsylvania state inmate's § 1983 action against Board Secretary Barkley that Barkley's mere signature on a Board decision does not "raise[ ] a plausible inference that Barkley was responsible for calculating [the plaintiff's] release date, or that she participated personally in any violation of [the plaintiff's] rights."); <u>see also</u> <u>Goodwine v. Keller</u>, No. 09–1592,2012 WL 4482793, at *8 (W.D. Pa. Sept. 26, 2012) ("The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement [on the part of defendants].").

The same is true for plaintiff's allegations against Conjour and Foulds.  Plaintiff claims that

> Conjour personally supervised plaintiff's case and arrested Plaintiff on March 26, 1998, with no prima facie case established in the context of Plaintiff's federal arrest.  Defendant Conjour gave notice of a hearing and charges on March 26, 1998. . . . Defendant Conjour personally failed to perform his duties and failed to maintain proper records.

Dkt. No. 1 at ¶ 33.  He asserts that "Foulds personally placed a detainer on Plaintiff 26 days after Plaintiff's max date, failed to review the legitimacy of this detainer for 15 years despite complaints from Plaintiff, and again executed the detainer on March 1, 2013 . . . ." <u>Id.</u> at ¶ 28.

These allegations against Conjour and Foulds perhaps come one step closer to showing that they

bear some individual responsibility for plaintiff's alleged overdetention.  But as with the other

defendants, although the caption of plaintiff's complaint identifies defendants by their job titles,

Dkt. No. 1 at ECF p. 3-4, nowhere in his complaint does he provide any allegations with respect

to the authority or obligations imposed by their respective positions.

> With respect for his claim for overdetention, plaintiff's complaint

>> does not address the scope of each Defendant's duties and the role
>> each Defendant played in the life of the prison.  The [complaint]
>> also lacks any allegations of fact regarding each Defendant's
>> authority or ability to address the alleged violation of Plaintiff's
>> Constitutional rights.  Consequently, [with respect to these
>> defendants], the [complaint] does not allege any facts that would
>> demonstrate the third element of a claim of incarceration without
>> penological justification, i.e., the causal connection between each
>> Defendant's failure to act and Plaintiff's continued unjustified
>> detention.

Bosold, 2011 WL 6812902, at *7.  As the Court of Appeals explained in Sample v. Diecks, 885

F.2d 1099, 1110 (3d Cir. 1989),

>> [o]bviously, not every official who is aware of a problem exhibits
>> indifference by failing to resolve it.  A warden, for example,
>> although he may have ultimate responsibility for seeing that
>> prisoners are released when their sentences are served, does not
>> exhibit deliberate indifference by failing to address a sentence
>> calculation problem brought to his attention when there are
>> procedures in place calling for others to pursue the matter.  On the
>> other hand, if a prison official knows that, given his or her job
>> description or the role he or she has assumed in the administration
>> of the prison, a sentence calculation problem will not likely be
>> resolved unless he or she addresses it or refers it to others, it is far
>> more likely that the requisite attitude will be present.

Absent allegations regarding defendants' responsibilities, plaintiff cannot proceed with Count I

of his complaint:  his claim for overdetention.

> With respect to plaintiff's due process claim, his complaint includes no allegations that

any of the relevant defendants are "responsible for enacting or authorizing procedures and policies for inmates who are unlawfully held, including those held past there release dates, to seek redress for the violation of their constitutional rights . . . ." Bosold v. Warden, SCI-Somerset (Bosold II), No 11-4292, 2013 WL 315714, at *6 (E.D. Pa. Jan. 28, 2013) (finding plaintiff had sufficiently alleged a claim for violation of his Fourteenth Amendment right to procedural due process where he had alleged "that the procedures available to him did not provide due process of law because the available procedures did not result in anyone *with authority* promptly responding to Plaintiff's inmate communications by deciding Plaintiff's challenge to his continued detention or passing his challenge on to someone else for further review and decision; and that defendants were *responsible for authorizing and enacting* those inadequate procedures.") (emphasis added).  Without these allegations, I conclude that Count II of plaintiff's complaint is not sufficient to plead a claim for the violation of his rights under the Fourteenth Amendment.

III.    **Statute of Limitations:  Claims Against Defendants Conjour, Christian, Bushey, Foulds and Ward**

        Defendants also contend that plaintiff's claims against defendants Conjour, Christian, Bushey, Foulds and Ward are time barred.  "Generally, the statute of limitations is not an appropriate ground for a motion to dismiss brought pursuant to Rule 12(b)(6), and an exception is made only 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'"  Id., quoting Budzash v. Howell Twp., 451, F. App'x 106, 109 (3d Cir. 2011) (further citations omitted).  Plaintiff's claims in this action are subject to a two year statute of limitations.  See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (determining that the statute of limitations for a § 1983 claim is properly governed by Pennsylvania's statute of limitations for personal injury claims); 42 Pa. Cons. Stat.

§ 5524 (providing a two year statute of limitations for a personal injury claim and for claims for false imprisonment and false arrest).  "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which the action is based.'"  Id., quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

Defendants argue that plaintiff's claims against Conjour, Christian, Bushey, Foulds and Ward "address Beto's 1998 arrest, alleged lack of due process and warrants against him" and that "[w]hile Beto may not have realized the full impact of the 1998 events until 2013, as a participant in the events, he had to be aware of them."  Dkt. No. 2-1 at ECF p. 7.  Plaintiff counters that the statute of limitations for his claims against these defendants was tolled by the both the discovery rule and the continuing violation doctrine.  Dkt. No. 5 at ECF p. 10-12.

The discovery rule "tolls the statute of limitations until a plaintiff actually discovers the harm caused . . . ."  R.J. Holding Co. v. Redevelopment Auth., 165 F. App'x 175, 180 (3d Cir. 2006) (citation omitted).  It applies when "a plaintiff is unable, 'despite the exercise of due diligence, to know of the injury or its cause.'"  Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006), quoting Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983) (emphasis in original).  The focus of the discovery rule is "not on the plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff."  Mest, 449 F.3d at 511 (internal citations and quotations omitted).

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)

(internal quotation and citation omitted).

> To determine whether a practice was continual, [I must] consider
> (1) whether the violations are part of the same subject matter and
> (2) whether the violations occurred frequently. . . .  A plaintiff
> must also point to an affirmative act that took place within the
> limitations period for the continuing violations doctrine to apply."

Cibula v. Fox, 570 F. App'x 129, 135-36 (3d Cir. 2014) (citations omitted).  "[C]ontinual ill

effects from an original violation" – unlike "continual unlawful acts" – cannot serve as the basis

of a continuing violation.  Cowell, 263 F.3d at 293.

Defendants contend that the discovery rule does not apply to plaintiff's claims against the

defendants involved in the 1998 events because Beto knew of his injury, as is shown by his

allegations that he "was sent to high security USP Lewisburg because there was a state detainer

lodged" and that, because of defendants' actions, he was "subjected to a harsher, higher-level

security custodial environment while in federal prison than if the state detainer had not been put

into effect."[6]  Dkt. No. 6 at ECF p. 3, citing Dkt. No. 1 at ¶¶ 18, 24.  In his response to

defendants' motion, plaintiff contends that because he "was not harmed until he was kept over

his maximum sentence date in 2013 and until he was kept in federal custody and not released to a

---

[6]     As defendants contend, plaintiff's allegations are sufficient to show that he had knowledge of the conditions of his confinement when, "[i]n November of 1998, Plaintiff was sent to high security USP Lewisburg, id. at ¶ 18, and thus demonstrate that tolling should not apply to such a claim under the discovery rule.  Plaintiff thus fails to state a claim against defendants to the extent that his claim against them is based on being subjected to "a harsher, higher level security custodial environment," including being made ineligible for release to a halfway house.  Dkt. No. 1 at ¶ 24.

Further, even if plaintiff's claim with respect to being held in a "harsher, higher-level security custodial environment," id., were not time barred because he did not know until 2012 that he would be denied release to a halfway house, he does not have a constitutional right to a particular type of confinement.  "A federal prisoner has no right to serve his sentence in any particular facility, including a halfway house."  See Chappelle v. Varano, No. 11-304, 2011 WL 4950083, at *7-8 (M.D. Pa. Sept. 30, 2011), citing 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau [of Prisons] . . . to determine or change the place of imprisonment of that person.").

halfway house in 2012 because of the contested illegal state detainer at issue."  Dkt. No. 5 at
ECF p. 10.  He argues that the discovery rule permits his claims to proceed because his claims
"were not ripe until he was harmed by Defendants' actions which did not occur until 2012 and
2013 when Plaintiff was denied early prerelease in the federal system and detained beyond his
maximum sentence date in the state system."  Id. at ECF p. 5.

Defendants also argue that plaintiff's allegations fail to show a continuing violation
because they "cannot reasonably constitute anything more than the occurrence of isolated or
sporadic acts between 1998 and 2013" and because "challenged inactivity such as a lack of
response does not constitute the affirmative action requisite for the doctrine to apply."  Dkt. No.
6 at ECF p. 4.  Plaintiff contends that he has sufficiently alleged a continuing violation because
"Defendants continued to violate Plaintiff's rights by failing to review, alter and amend their
illegal practices despite ongoing complaints, grievances, and parole Petitions."  Dkt. No. 5 at
ECF p. 11.

I presently decline to find that plaintiff's claims against Foulds are time barred.
Noncompliance with limitations period does not "clearly appear on the face of the pleading"
given plaintiff's allegation that Foulds "again executed the detainer on March 1, 2013," a date
within the relevant limitations period.  Dkt. No. 1 at ¶ 28.

Plaintiff's claims against Conjour, Christian, Ward and Bushey relate to discrete acts
which occurred in 1998 and there is no basis in the complaint for finding that their alleged
actions give rise to a continuing violation or that the discovery rule should toll the statute of
limitations with respect to their conduct.  Plaintiff was detained based on Conjour and
Christian's alleged actions in March 1998 and alleges that thereafter he was transported from
state custody to federal custody in October 1998, when he claims that Ward "reviewed and

signed documents which revoked a warrant to detain Plaintiff." Dkt. No. 1 at ¶ 16.  Plaintiff

knew then, more than a decade before he filed this action, that he was being placed into federal

custody on the basis of their actions.  With respect to Bushey, plaintiff alleges only that Bushey

reviewed and personally signed off on paperwork regarding the detainer placed on plaintiff.  Id.

at ¶ 27.  The complaint does not make clear that Bushey signed papers or reviewed documents

regarding the detainer more than once or at any point after 1998. [7] On the allegations now before

me, plaintiff's claims against Conjour, Christian, Ward and Bushey are time barred.

## IV.    Leave to Amend

When a civil rights plaintiff's claims are dismissed pursuant to Rule 12(b)(6), leave to

amend must be granted "unless doing so would be inequitable or futile."  Fletcher-Harlee Corp.

v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see, e.g. Alston v. Parker,

363 F.3d 229, 235-36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a

complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative

amendment, unless an amendment would be inequitable or futile.").  Plaintiff will be granted

leave to amend his state law claims only to the extent that he is able to set forth sufficient

allegations to show that the conduct of any defendant was outside of the scope of his or her

employment.  I will grant plaintiff leave to amend his section 1983 claims against defendants in

their individual capacity only and only to the extent that he is able to plead facts sufficient to

show defendants' personal involvement in the alleged violation of his rights.  In order to amend

his claims against Conjour, Christian, Bushey and Ward, plaintiff must also plead facts sufficient

---

[7]        Even if I were to here consider Exhibit E to plaintiff's response to defendant's
motion to dismiss, I would not find that it is sufficient to show that Bushey should be found
liable for a continuing violation. Dkt. No. 5-5 at ECF p. 2.  The exhibit references a "warrant for
paroled prisoner issued 2/5/1999" signed by Bushey.  Id.  Assuming arguendo that this was a
second, separate detainer from the detainer issued in November 1998, plaintiff has not shown
that their issuance was part of a practice that continued beyond 1999.

to show that his claims are not barred by the statute of limitations.

An appropriate Order follows.