IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL BETO | : | CIVIL ACTION |
| | : | NO. 14-cv-2522 |
| v. | : | |
| | : | |
| KIMBERLY A. BARKLEY, et al. | : | |

O'NEILL, J.                                                           February 8, 2016

## MEMORANDUM

Now before me is defendants' motion to dismiss plaintiff Samuel Beto's second amended complaint (Dkt. No. 21).  The motion is brought on behalf of all remaining defendants who are current or former Pennsylvania Board of Probation and Parole (PBPP) officials:  Chairman William F. Ward, Board Secretary Kimberly A. Barkley, Board Secretary W. Conway Bushey, Interstate Director Marlin F. Foulds, Parole Agent Kathleen DeMauro, Hearing Examiner Michael Duda, Parole Agent Fred Conjour and Agent James De Sousa and on behalf of Superintendent Vince Mooney of the Pennsylvania Department of Corrections.  Also before me are plaintiff's response (Dkt. No. 22) and defendants' reply (Dkt. No. 23).  For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

Plaintiff's original complaint in this action was dismissed with leave to amend "his section 1983 claims against defendants in their individual capacity only and only to the extent that he is able to plead facts sufficient to show defendants' personal involvement in the alleged violation of his rights."  Dkt. No. 10.  Plaintiff was also granted leave amend his claims against Conjour, Bushey and Ward to the extent that he was able to "plead facts sufficient to show that

his claims are not barred by the statute of limitations."[1]  Id.  Thereafter, plaintiff filed an amended complaint which I dismissed because it brought claims against defendants in their official capacities in violation of my order dismissing his original complaint.  Dkt. No. 17.

Now, in Count I of his second amended complaint,[2] plaintiff alleges that the remaining defendants, in their individual capacities, violated his rights under the Eighth Amendment.  In Count II, he alleges that defendant Conjour violated his right to due process.  Plaintiff claims that by their violation of his rights, defendants caused him to be "deprived of his liberty for a period of approximately 689 days which includes both excess time in Pennsylvania detention and three-hundred-and-sixty-five extra days in federal prison because of a Pennsylvania detainer that determined that Plaintiff was a high-security prisoner and was not eligible for release to a halfway house."  Dkt. No. 20 at ¶ 24.  He also claims that "he was subjected to a harsher, higher-level security custodial environment while in federal prison than if the state detainer had not been put into effect."  Id.

The facts alleged  in plaintiff's second amended complaint are as follows.  On February 17, 1989, plaintiff was sentenced in the Court of Common Pleas of Montgomery County "to an aggregate term of 2 1/2 to 10 years incarceration and 7 years of probation . . . ."  Dkt. No. 20 at ¶ 10.  "The maximum sentence date for these sentences was October 3, 1998."  Id.  On March 20, 1992, plaintiff was resentenced following an arrest and conviction in Montgomery County.  Id.  Plaintiff alleges that the maximum date for his new sentence was July 23, 1998.  Id.

---

[1]     Additionally, plaintiff was granted leave to amend "his state law claims only to the extent that he is able to set forth sufficient allegations to show that the conduct of any defendant was outside of the scope of his or her employment," Dkt. No. 10, but his second amended complaint does not assert any claims under state law.  Dkt. No. 20.

[2]     In his second amended complaint, plaintiff no longer asserts claims against Supervisor Carl Christian or Supervisor David M. Dettinburn.  See Dkt. No. 20.

Prior to that date, on March 25, 1998, plaintiff was arrested on a federal arrest warrant.[3] Id. at ¶ 11.  He made bail on the same day.  Id.  "On March 26, 1998, Plaintiff reported to his state parole officer and was detained."  Id. at ¶ 12.  He alleges that Conjour arrested him "with no prima facie case established in the context of Plaintiff's federal arrest."  Id. at ¶ 33. Nevertheless, plaintiff entered into a guilty plea on the federal charges against him on May 11, 1998.[4]  Id. at ¶ 13-14.

"[O]n October 21, 1998, federal authorities transported plaintiff from SCI Graterford to FCI Farrington for presentencing."  Id. at ¶ 16  "On October 26, 1998, Plaintiff was sentenced in the United States District Court for the Eastern District of Pennsylvania to 17 years incarceration with the possibility of doing 15 years if plaintiff exhibited good behavior, followed by 3 years of supervised release."  Id. at ¶ 17; see also United States v. Beto, Cr. No. 98-131 (Dkt. No. 84).  In November 1998, he "was sent to high security USP Lewisburg because there was a state detainer lodged despite the fact that Plaintiff had maxed out his state sentences."  Dkt. No. 20 at ¶ 18.  On March 1, 2013, having served 15 years on his federal sentence, plaintiff was released from USP Lewisburg.  Id. at ¶ 19.  "Upon release from USP Lewisberg, and because Defendants employed

_____

[3]     In deciding defendants' motion to dismiss I may consider documents which are "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006), quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) (internal quotation marks and citations omitted).
        Plaintiff's Petition for Writ of Mandamus filed in the Commonwealth Court, referenced in his second amended complaint and attached to defendants' motion to dismiss, asserts that the March 25, 1998 arrest "resulted in a violation of appellant's Pennsylvania Parole No. 4090 S." Dkt. No. 21-3 at ECF p. 4.
[4]     Plaintiff's Petition for Writ of Mandamus asserts that he "entered a plea of Guilty in Federal Court" on "May 11, 1998."  Dkt. No. 21-3 at ECF p. 5.  The docket for United States v. Beto, Cr. No. 98-131 (E.D. Pa.), at Dkt. No. 56, reflects that plaintiff changed his plea from not guilty to guilty and the Court accepted plaintiff's guilty plea on May 12, 1998.  Plaintiff sought to withdraw his guilty plea after it had been entered, but withdrawal was not allowed. United States v. Beto, Cr. No. 98-131 (E.D. Pa.), at Dkt. Nos. 76, 112, 123.

by the Department of Probation and Parole had issued a detainer, Plaintiff was transported  to SCI Coal Township."  Id. at ¶ 20.  Plaintiff contends that "[d]espite multiple grievances, letters, parole Petitions and scheduled hearings, [he] remained incarcerated at SCI Coal Township until July 12, 2013, when he was released."  Id. at ¶ 21.

Plaintiff asserts that "Conjour "gave notice of a hearing and charges on March 26, 1998" and that the PBPP "had fourteen (14) days from this date for a probable cause hearing and was required to have a revocation hearing within one-hundred-and-twenty(120) days."[5]  Id. at ¶ 33.

---

[5]     Defendants argue that plaintiff "did not have a right to a fourteen-day hearing which applies to alleged technical parole violations. Dkt. No. 21-1 at ECF p. 9, citing 37 Pa. Code § 71.2. Defendants also argue that plaintiff "did not have a right to the probable cause hearing that applies for new criminal charges, because probable cause was already established." Dkt. No. 21-1 at ECF p. 10.  They contend that plaintiff's "factual allegations confirm that probable cause was established as to the new federal crime" since he alleges "that he reported his criminal charge to his parole agent and that he made bail."  Id.

Section 71.4(1) of the PBPP regulations provides, in relevant part:

> A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as . . . confinement in a Federal correctional institution . . . where the parolee has not waived the right to a revocation hearing . . . the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa. Code § 71.4(1).  "Official verification" is defined as:  "Actual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted."  37 Pa. Code § 61.1.  Plaintiff does not allege when the PBPP received official verification of his guilty plea but argues that "he was held in state custody for 40 days beyond the 120 days when he was entitled to a hearing."  Dkt. No. 22 at ECF p. 9.  Defendants concede that it is unclear whether plaintiff "became a convicted parole violator on the date of his guilty plea or his sentencing."  Dkt. No. 21-1 at ECF p. 11.

Defendants argue that if the 120 days is calculated as of plaintiff's sentencing, plaintiff's "parole revocation hearing of May 9, 2013 was well within 120 days of March 1, 2013," the date

He claims that "Conjour personally failed to perform his duties and failed to maintain proper records despite being told by both Plaintiff and Plaintiff's wife . . . that plaintiff was being illegal[ly] detained without a parole revocation hearing . . . ." Id. Plaintiff claims that he "was held in state custody at Montgomery County Prison and SCI Graterford from March 26, 1998, until October 21, 1998, without ever being given a parole violation hearing" but "[t]here was no basis for detaining [him] after 14 days because no prima facie case had been established by federal authorities." Id. at ¶ 15. He asserts that he "never had a state parole . . . setback while at SCI Graterford." Id. at ¶ 14.

Plaintiff alleges that he "was informed that Defendant Ward had lifted the detainer [against Plaintiff] because Plaintiff had maxed out his state sentences . . . ." Id. at ¶ 16. However, plaintiff claims that instead, on October 16, 1998, "Ward did not . . . close Plaintiff's case," although he "personally reviewed and signed documents which revoked a warrant to detain Plaintiff." Id. at ¶ 29. Plaintiff alleges that his wife "wrote directly to Defendant Ward in 1998 and 2000 informing Defendant Ward that plaintiff had not been given a timely parole revocation hearing, that Plaintiff's sentence had maxed out, and that Plaintiff was being illegally detained." Id. Plaintiff alleges that "Ward's office contacted Ms. Beto and said that Plaintiff's 'case was referred to a Specialist to insure that the appropriate course of action is being taken.'" Id. He claims that Ward "fail[ed] to investigate and respond to Ms. Beto's complaints . . . ." Id.

He asserts that his wife "wrote directly to Defendant Bushey on July 23, 1998 informing Defendant Bushey that Plaintiff was being kept beyond Plaintiff's maximum date. " Id. at ¶ 27.

---

of plaintiff's return to state custody. Id. If, instead the 120 day period began to run on the date of plaintiff's guilty plea, "then the 120 days for the parole revocation hearing would have expired while Beto remained in state custody." Id. at ECF p. 12.

I will not here decide the question of whether the 120 day period began to run on the date of plaintiff's guilty plea or on the date of his sentencing because I find that, regardless of the answer, plaintiff's allegations remain insufficient to withstand defendants' motion to dismiss.

Plaintiff alleges that Bushey did not hold a timely Parole hearing in 1998 and that he "reviewed and signed off on paperwork mandating that an illegal detainer remain on Plaintiff from November 1998 until July 2013." Id. Plaintiff asserts that he "filed a pro se Petition for Writ of Mandamus in the Commonwealth Court of Pennsylvania which was served upon the Board of Probation and Parole and which detailed the illegality of the detainer instigated by Defendant Bushey and the failure to provide Plaintiff a timely parole revocation hearing." Id. Plaintiff's complaint does not allege the date of his mandamus petition, but defendants attach a copy to their motion to dismiss. [6] Dkt. No. 21-3 at ECF p. 3-12. Plaintiff's allegations to the contrary, the petition makes no reference to Bushey. Id.

Plaintiff also contends that 26 days after his "max date," "Foulds personally placed a detainer on Plaintiff." Dkt. No. 20 at ¶ 28. Plaintiff alleges that Foulds

> failed to review the legitimacy of this detainer for 15 years despite complaints from plaintiff, including a pro se Petition for Writ of Mandamus which was filed in the Commonwealth Court of Pennsylvania and served upon the Board of Probation and Parole and which detailed the illegality of Defendant Foulds' detainer, and again executed the detainer on March 1, 2013, meaning that Plaintiff was returned to state prison following completion of his federal sentence.

Id. Here again, plaintiff provides no information regarding the date of his Writ of Mandamus. Id. Nor does plaintiff allege that Foulds had reason to be on notice of any of his complaints or the Petition for Writ of Mandamus. Id. And with Bushey, plaintiff's petition makes no specific reference to Foulds. Dkt. No. 21-3 at ECF p. 3-12.

Plaintiff asserts that Barkley had personal knowledge of the need to take corrective action

---

[6] The Commonwealth Court ruled on September 27, 2007 that plaintiff's challenge to the timeliness of his revocation hearing was "premature." Id. at ECF p. 2. And the Supreme Court of Pennsylvania denied plaintiff's petition for allowance of appeal from the Commonwealth Court's Order on May 27, 2008, id. at ECF p. 1, – well prior to plaintiff's filing of this action.

because he sent Barkley "approximately six letters and pro se Petitions . . . between March of 2013 and July of 2013 informing Defendant Barkley that Plaintiff was being detained beyond his maximum date without any response." Dkt. No. 20 at ¶ 26.  In the paragraph of his second amended complaint discussing Barkley, plaintiff alleges that he also "sent a Motion to Dismiss the parole charges before his parole hearing – although he does not specify to whom he sent the motion.  Id.

Plaintiff claims that DeMauro "worked for the Parole Board and liaised with the [Department of Corrections] at SCI Coal Township"  and "was personally involved in receiving numerous requests and grievances by Plaintiff regarding [his] continued illegal detention from March 1, 2013, until Plaintiff's eventual release in July of 2013."  Id. at ¶ 31.  Plaintiff alleges that he "also had seven or eight personal conversations with Defendant De[M]auro but she conducted no investigation and was not responsive to Plaintiff's complaints regarding unwarranted punishment."  Id.  No time frame is given for the alleged conversations.  Id.  He also contends that he submitted "numerous grievance slips" to Mooney and Mooney's subordinates.  Id. at ¶ 30.  He alleges that "Mooney said it was not his problem and that it was a Parole Board problem."  Id.  No timeframe is given for Mooney's remark or for plaintiff's alleged grievance slips.  Id.

Plaintiff asserts that defendant De Sousa, who was assigned to his case in 2013, "signed a new notice of charges against" him.[7]  Id. at ¶ 34.  He alleges that his wife complained to "De Sousa that Plaintiff was being held beyond his maximum date" but "De Sousa did not conduct

---

[7]      In his response to defendants' motion to dismiss his second amended complaint, plaintiff argues that "in an attempt to circumvent 37 Pa. Code § 71.4(1), . . . De Sousa and his supervisor wrote that '[f]ederal probation advised parole staff the defendant had withdrawn his guilty plea.  Defendant plead guilty to federal charges on 10/26/1998 . . . [.]'  This is untrue and constitutes a deliberate effort on the part of these Defendants to obviate Plaintiff's rights."  Dkt. No. 22 at ECF p. 10.  This allegation does not appear in plaintiff's second amended complaint.

any investigation into Plaintiff being incarcerated beyond his maximum date." <u>Id.</u>  Instead, he claims that "De Sousa told Plaintiff's wife that the Board was allowed to do what it was doing and that Plaintiff and his wife were reading law books incorrectly." <u>Id.</u>

Plaintiff alleges that "Duda wanted to make Plaintiff wait for a Board hearing until July 12, 2013, when the hearing should have occurred on May 29, 2013." Dkt. No. 20 at ¶ 32.  But he concedes that "[e]ventually, a hearing was conducted on May 9, 2013."  Plaintiff contends that, although he "requested that he be released that day" having "explained that he was being detained in excess of his maximum date," he then "had to wait eight (8) weeks and three (3) days for a Board decision when such decisions normally occur within four (4) to six (6) weeks." <u>Id.</u>

Defendants now seek to dismiss plaintiff's second amended complaint, arguing that

> it fails to comply with the Court's order that permits amendment of claims in two respects.  The latest pleading fails to plead facts as to Conjour, Bushey and Ward sufficient to show that the claims are not time-barred.  The amendment also fails to comply with the order requiring him to show defendants' personal-involvement in the alleged constitutional violations.

Dkt. No. 21-1 at ECF p. 2.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."[8] Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

---

[8]      In their motion to dismiss, defendants state that the "Court's summary of the applicable standards in Document 9 is incorporated herein."  Dkt. No. 21-1 at ECF p. 5. Defendants previously moved to dismiss the claims in plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6).  <u>See</u> Dkt. No. 2.  Defendants' present motion to dismiss does not argue that dismissal is warranted for lack of jurisdiction, thus I here omit reference to the standard for applying Rule 12(b)(1).

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

**DISCUSSION**

## I.    Claims Against Conjour, Bushey and Ward:  Statute of Limitations

Plaintiff's claims in this action are subject to a two year statute of limitations.  See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (determining that the statute of limitations for a § 1983 claim is properly governed by Pennsylvania's statute of limitations for personal injury claims); 42 Pa. Cons. Stat. § 5524 (providing a two year statute of limitations for a personal injury claim and for claims for false imprisonment and false arrest).  "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which the action is based.'"  Kach, 589 F.3d at 634, quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

Defendants argue that the statute of limitations continues to bar plaintiff's claims against Conjour, Bushey and Ward, as his second amended complaint "adds no new allegations that sidestep the time bar."  Dkt. No. 21-1 at ECF p. 7.  Defendants argue that plaintiff "merely emphasizes subsequent inactivity" and "cannot successfully rely upon a claim that he did not know the full extent of the effect of the detainer until over a decade afterward."  Dkt. No. 21-1 at ECF p. 1.  Plaintiff contends that his claims "are not barred by the statute of limitations because Plaintiff was not harmed until he was kept over his maximum sentence date in 2013 and until he was kept in federal custody and not released to a halfway house in 2012 because of the contested illegal state detainer at issue.  Dkt. No. 22 at ECF p. 6.  Defendants respond that "Beto cannot avoid his own averment in his second amended complaint that the challenged 1998 detainer caused him harm as early as 1998, upon his transfer to federal custody."  Dkt. No. 23 at ECF p. 1-2.  Specifically, they rely on plaintiff's allegation that "[i]n November of 1998, Plaintiff was sent to high security USP Lewisberg because there was a state detainer lodged despite the fact

that Plaintiff had maxed out his state sentences."  Dkt. No. 20 at ¶ 18.  Defendants argue that this

allegation shows that, "even though [plaintiff] may not have realized the full extent of his alleged

harm until later," plaintiff's "cause of action accrued many years ago."  Dkt. No. 23 at ECF p. 2.

A "cause of action accrues even though the full extent of the injury is not then known or

predictable. . . . Were it otherwise, the statute would begin to run only after a plaintiff became

satisfied that he had been harmed enough, placing the supposed statute of repose in the sole

hands of the party seeking relief."  Wallace v. Kato, 549 U.S. 384, 391 (2007) (internal quotation

and citation omitted)  (finding that "the statute of limitations on petitioner's § 1983 claim [for

detention without legal process] commenced to run when he appeared before the examining

magistrate and was bound over for trial" and not from the date of his release from custody).

Even with its amended allegations, plaintiff's claims against Conjour, Ward and Bushey in his

second amended complaint relate only to their isolated acts which occurred more than a decade

before he filed this action and there is no basis for finding that their alleged actions give rise to a

continuing violation[9] or that the discovery rule[10] should toll the statute of limitations with respect

---

[9]     Under the continuing violation doctrine, "when a defendant's conduct is part of a
continuing practice, an action is timely so long as the last act evidencing the continuing practice
falls within the limitations period."  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)
(internal quotation and citation omitted).

> To determine whether a practice was continual, [I must] consider
> (1) whether the violations are part of the same subject matter and
> (2) whether the violations occurred frequently. . . .  A plaintiff
> must also point to an affirmative act that took place within the
> limitations period for the continuing violations doctrine to apply."

Cibula v. Fox, 570 F. App'x 129, 135-36 (3d Cir. 2014) (citations omitted).  "[C]ontinual ill
effects from an original violation" – unlike "continual unlawful acts" – cannot serve as the basis
of a continuing violation.  Cowell, 263 F.3d at 293.

[10]     The discovery rule "tolls the statute of limitations until a plaintiff actually
discovers the harm caused . . . ."  R.J. Holding Co. v. Redevelopment Auth., 165 F. App'x 175,
180 (3d Cir. 2006) (citation omitted).  It applies when "a plaintiff is unable, '*despite the exercise*

to their conduct.  It is not enough for plaintiff to argue that "[d]efendants continued to violate Plaintiff's rights by failing to review, alter and amend their illegal practices despite ongoing complaints, grievances, and parole Petitions."  Dkt. No. 22 at ECF p. 7.  The facts alleged in the second amended complaint must show that plaintiff has a "plausible claim for relief."  Iqbal, 556 U.S. at 679.

With respect to Ward, plaintiff's new allegations that his wife "wrote directly to Defendant Ward in 1998 and 2000 informing Defendant Ward that plaintiff had not been given a timely parole revocation hearing" and that Ward's office informed plaintiff's wife that plaintiff's "case was referred to a Specialist," Dkt. No. 20 at ¶ 29, are not sufficient to plead a continuing violation.  "[A] continued failure to act does not constitute a continuing violation."  Lynch v. Philadelphia, 194 F. App'x 89, 92 (3d Cir. 2006).  If anything, plaintiff's allegation that his wife complained in 1998 and 2000 about the failure to provide him with a timely parole revocation hearing provides further support for the conclusion that plaintiff cannot avail himself of the discovery rule to save his claim against Ward.

As for his claim against Bushey, plaintiff's new allegation that his wife "wrote directly to Defendant Bushey on July 23, 1998, informing Defendant Bushey that Plaintiff was being kept beyond Plaintiff's maximum date," Dkt. No. 20 at ¶ 27, likewise provides support for the conclusion that plaintiff cannot avail himself of the discovery rule to save his claim.  The same goes for plaintiff's new allegation that he "filed a pro se Petition for Writ of Mandamus in the Commonwealth Court of Pennsylvania . . . . which detailed the illegality of the detainer

---

*of due diligence*, to know of the injury or its cause.'"  Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006), quoting Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983) (emphasis in original).  The focus of the discovery rule is "not on the plaintiff's actual knowledge, but rather on whether the knowledge . . . through the exercise of diligence, knowable to the plaintiff."  Mest, 449 F.3d at 511 (internal citations and quotations omitted).

instigated by Defendant Bushey and the failure to provide Plaintiff a timely parole revocation hearing."[11]  Id.  Further, none of plaintiff's new allegations regarding Bushey are sufficient to support a continuing violation theory.

With respect to his claims against Conjour under both the Eighth and Fourteenth Amendments, plaintiff's only new allegation is that Conjour was "told by both Plaintiff and Plaintiff's wife . . . that plaintiff was being illegal[y] detained without a parole revocation hearing and a detainer that was placed on Plaintiff after his maximum sentence date."  Dkt. No. 20 at ¶ 33.  Defendants argue that "[t]he Court need not even consider the due process claim [against Conjour] at this point, because Beto failed to comply with the Court's order to specify any action by Conjour within the statutory limitations period."  Dkt. No. 21-1 at ECF p. 8. Plaintiff counters that "Conjour's unconstitutional shortcoming continued until 2013."  Dkt. No. 22 at ECF p. 8.  Plaintiff's additional vague allegation, an allegation which contains no information with respect to the timing of the alleged communications with Conjour is insufficient to support application of either the continuing violation doctrine or the discovery rule to plaintiff's claims against him.

Plaintiff has already had an opportunity to rectify his allegations regarding the timeliness of his claims against Conjour, Bushey and Ward.  Because he has been unable to plead sufficient facts to permit me to find that his claims against them are properly within the statute of limitations, I will dismiss his claims against Conjour, Bushey and Ward with prejudice.  Cf. Alston v. Parker, 363 F.3d 229, 235–36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a

---

[11]      The Commonwealth Court's determination that plaintiff's mandamus challenge to the timeliness of his parole revocation hearing was "premature" does not convert plaintiff's claims against Bushey into a claim for a continuing violation.  Dkt. No. 21-3 at ECF p. 2.

curative amendment, unless an amendment would be inequitable or futile.").

## II.     Claims Against Barkley, Foulds, DeMauro, Duda, De Sousa and Mooney

"[I]t is unsurprising (though of course unfortunate) that errors occur and that prisoners are sometimes over-detained."  Wharton v. Coupe, No. CV 12-1240-LPS, 2015 WL 5768936, at *7 (D. Del. Sept. 30, 2015) (finding that "[e]vidence that some incidents of over-detention occurred is not sufficient, by itself, to show that [the defendant] was deliberately indifferent to such incidents").  However, regardless of whether or not plaintiff was, in fact, detained beyond the length of his sentence, I find that the allegations in plaintiff's second amended complaint remain insufficient to state a plausible claim for a violation of his rights under the Eighth Amendment against Barkley, Foulds, DeMauro, Duda, De Sousa or Mooney, defendants who are arguably not subject to a time bar under plaintiff's amended allegations. As I explained in my prior opinion, to recover against defendants for overdetention in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983, plaintiff must show:

> (1) a prison official had *knowledge* of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either *failed to act or took only ineffectual action* under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a *causal connection* between the official's response to the problem and the unjustified detention.

Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010), as amended (May 25, 2010) (emphasis added), citing Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989).  Plaintiff's amended allegations still fail to meet the requirements set forth in Montanez.

First, plaintiff again alleges conclusorily that "[e]ach individually-named Defendant had personal knowledge that unwarranted punishment was being inflicted upon Plaintiff."  Dkt. No. 1 at ¶ 25.  This allegation, without more, remains insufficient to plead the requisite personal

involvement under <u>Twombly</u>.  Relevant here, plaintiff alleges that Barkley, "was sent approximately six letters and pro se Petitions by Plaintiff between March of 2013 and July of 2013 . . . without any response."  Dkt. No. 20 at ¶ 26.  Importantly, however, plaintiff does not allege that Barkley *received* the letters that he sent.  <u>Id.</u>  His allegations are insufficient to show that Barkley had the requisite personal knowledge to permit plaintiff's claim against her to proceed and I will dismiss his claims against her.

Likewise, plaintiff's amended allegations against Foulds are insufficient to plead that he had the requisite personal knowledge to support a claim against him for overdetention.  Plaintiff contends that Foulds, identified in the caption as "Interstate Director," <u>id.</u> at ECF p. 1, "personally placed a detainer on Plaintiff 26 days after Plaintiff's max date, failed to review the legitimacy of this detainer for 15 years despite complaints from Plaintiff, . . . and again executed the detainer on March 1, 2013 . . . ."  <u>Id.</u> at ¶ 28.  Plaintiff does not allege any basis for finding that Foulds had knowledge of his complaints.[12]  I will dismiss plaintiff's claims against Foulds.

Further, even if, drawing all reasonable inferences in favor of plaintiff, his second amended complaint now sufficiently alleges that the other defendants had knowledge that Plaintiff was being held after his maximum release date "and thus of the risk that unwarranted punishment was being, or would be, inflicted;" I find that his amended allegations remain insufficient to show that DeMauro, Duda, De Sousa or Mooney "failed to act . . . indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight."  <u>Montanez</u>, 603 F.3d at 252.  Likewise, plaintiff's second amended complaint remains deficient in

---

[12]     And even if plaintiff's allegations were sufficient to show that Foulds or Barkley had the requisite personal knowledge, as with the other defendants, his allegations are insufficient to show that either Foulds or Barkley were deliberately indifferent or that their alleged actions had a causal connection to plaintiff's alleged overdetention absent further allegations with respect to the scope of their duties.

that it fails to sufficiently allege "a causal connection between the [defendants'] response[s] to the problem and the unjustified detention."  Montanez, 603 F.3d at 252.

To determine whether an official acted with deliberate indifference, it is necessary to look at "the scope of the official's duties and the role the official played in the everyday life of the prison."  Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993), citing Sample, 885 F.2d at 1110.  It has been held that "[t]he fact that an official made a mistake calculating a prisoner's sentence is not enough, as allegations of negligence alone will not suffice to make out a constitutional tort."  Blatt v. Pennsylvania Bd. of Prob. & Parole, No. 12-1738, 2014 WL 3845725, at *10 (W.D. Pa. Aug. 4, 2014) (internal quotation omitted).  And "not every official who is aware of a problem exhibits indifference by failing to resolve it."  Sample, 885 F.2d at 1110.  As I wrote in my prior opinion, the Court of Appeals explained in Sample,

> A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter.  On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present.

Id.; see also Stackhouse v. Lanigan, No. 12-0072, 2013 WL 2182308, at *4 (D.N.J. May 20, 2013) (finding the plaintiff failed to sufficiently allege deliberate indifference where he did "not allege facts suggesting that any of these administrators had knowledge of the problem and the risk that unwarranted punishment was being inflicted after his state sentence was reversed").

With respect to Mooney, the only non-PBPP defendant, identified as "Superintendent," Dkt. No. 20. at ECF p. 1, plaintiff alleges that, despite "numerous grievance slips and letters

submitted to Defendant Mooney and his subordinates," Mooney was "personally involved" in his overdetention.  Dkt. No. 20 at ¶ 30.  Plaintiff now claims that "Mooney said it was not his problem and that it was a Parole Board problem."  Id. at ¶ 30.  Plaintiff, however, does not allege any basis for finding that it was, in fact, within Mooney's authority to address plaintiff's claim that he was being overdetained.  Defendants thus argue that plaintiff "does not and cannot reasonably allege that Supt. Mooney could have released him despite the PBPP detainer . . . . Nothing can plausibly suggest that once Beto brought his predicament to the superintendent's attention, Supt. Mooney had any duty or power to alter an inmate's convictions and sentences" or that he "had the authority to speed up the PBPP hearing process."  Dkt. No. 21-1 at ECF p. 16-17.

Plaintiff alleges that DeMauro, who he identifies in the caption as a "parole agent," Dkt. No. 20 at ECF p. 1, "was personally involved in receiving approximately twenty request slips and grievances by Plaintiff" and adds the new allegation that he "had seven or eight personal conversations with" her regarding his claimed overdetention "but she conducted no investigation and was not responsive to Plaintiff's complaints regarding unwarranted punishment."  Id. at ¶ 31. He also adds the new allegation that she "worked for the Parole Board and liaised with the DOC at SCI Coal Township . . . ."  Id.

Plaintiff asserts that Duda, identified as a "Hearing Examiner," id. at ECF p. 1, "wanted to make Plaintiff wait for a Board hearing until July 12, 2013" although "a hearing was conducted on May 9, 2013," where Duda was present with De[M]auro and "Plaintiff explained that he was being detained in excess of his maximum date . . . ."  Id. at ¶ 32.  Plaintiff contends that Duda took an unspecified "ineffective action and this meant that Plaintiff was unlawfully detained further for another two months because of Defendant Duda."  Id.

Plaintiff alleges that De Sousa, identified in the caption as "Agent James De Sousa," Dkt. No. 20 at ECF p. 1, signed a new notice of charges against plaintiff and was assigned Plaintiff's case in 2013."[13]  Id. at ¶ 36.  His only new allegation is that "De Sousa brushed off Plaintiff's wife and did not conduct any investigation into Plaintiff being incarcerated beyond his maximum date."  Id.

As with his allegations against Mooney, plaintiff's allegations against DeMauro, Duda and De Sousa are insufficient to plead that they had a duty to assist him with his concerns about his sentence or to investigate his sentence calculation.  Plaintiff's amended allegations against DeMauro, Duda and De Sousa do "not address the scope of each Defendant's duties and the role each Defendant played in [calculating his sentence].  The [second amended complaint] also lacks any allegations of fact regarding each Defendant's authority or ability to address the alleged violation of Plaintiff's Constitutional rights."  Bosold v. Warden, SCI-Somerset, No. 11-4292, 2011 WL 6812902, at *7 (E.D. Pa. Dec. 28, 2011).  In Bosold II, the plaintiff amended his previously deficient complaint to allege

> that each Defendant was responsible for "ensuring that prisoners' rights are not being violated," "ensuring that Court Orders are complied with" and "responding to legal issues involving the inmates," including, but not limited to, "inmate communication forms, where an inmate is being held unlawfully . . . including where an inmate is kept beyond his/her release date." . . . The [amended] Complaint further allege[d] that each of the Defendant's duties includes: "forwarding any sentencing calculation issue, civil rights deprivation or constitutional violation, for which he does not have sufficient power to rectify, to the appropriate employee of the Commonwealth."

Bosold v. Warden, SCI-Somerset (Bosold II), No 11-4292, 2013 WL 315714, at *5 (E.D. Pa.

---

[13]    As in his initial complaint, Plaintiff also alleges that "De Sousa told Plaintiff's wife that the Board was allowed to do what it was doing and that Plaintiff and his wife were reading law books incorrectly."  Dkt. No. 20 at ECF p. 36.

Jan. 28, 2013).  The Court then found that the plaintiff's amended complaint sufficiently alleged

"that [the] Defendants each failed to take any action to assist [the] Plaintiff, even though each

Defendant had the responsibility to do so" and therefore the amended "Complaint allege[d] a

causal connection between each Defendant's failure to act and [the] Plaintiff's unjustified

detention." Id. at *6.

      Here, plaintiff alleges only that "[e]ach Defendant . . . is an employee or former

employee of Department of Probation and Parole or the Department of Corrections" and that the

"Pennsylvania Department of Probation and Parole is a state administrative agency engaged in,

inter alia, oversight of state custodial terms, interstate detainers, early parole determinations, and

sentence minimum and maximum date determinations" and "[t]he Pennsylvania Department of

Corrections is a state administrative agency that houses incarcerated prisoners serving

Pennsylvania state prison sentences." Dkt. No. 20 at ¶ 4.  Plaintiff provides no other allegations

with respect to the authority or obligations imposed by DeMauro, Duda or De Sousa's positions.

(or those imposed by the positions held by the other remaining defendants).  I find that plaintiff's

amended allegations are not sufficient to show that DeMauro, Duda, De Sousa or Mooney are in

any way responsible for taking action to assist plaintiff with his claimed overdetention.  Nor is

plaintiff's identification of defendants by their job titles in the caption of his second amended

complaint sufficient to show the authority or obligations imposed by their respective positions.

Because plaintiff's second amended complaint still lacks allegations regarding defendants'

responsibilities, he cannot proceed with his claims against them.  See Goodwine v. Keller, No.

09-1592, 2012 WL 4482793, at *8 (W.D. Pa. Sept. 26, 2012) (finding that "no error in math

within the authority of any Defendant is alleged" and that the plaintiff had not sufficiently

"alleged that any of the DOC Defendants were authorized to override" the PBPP determination

regarding the duration of plaintiff's sentence").  Accordingly, I will dismiss plaintiff's second amended complaint in its entirety.[14]

       An appropriate Order follows.

---

[14]      Plaintiff's second amended complaint will be dismissed with prejudice. Plaintiff, who is represented by counsel, has already been afforded an opportunity to amend his complaint and state a legally sufficient basis for his claims and to allow further amendment would be futile and/or inequitable. See Alston v. Parker, 363 F.3d 229, 235–36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").